The next case is 121072, People v. Brian Pearse, Agenda No. 3, Council for Appellant. Are you ready? And happily, you may proceed. Good morning. My name is Jack Hildebrand, and I'm representing Mr. Brian Pearse in this matter. We're here because there's a conflict in how we're reading this statute. And at first blush, it looks like a complicated statute, but for purposes of our case, it's actually pretty simple to apply. And what makes it really easy to apply is if you keep in mind two propositions. The first one is that an offender can only have one registered residence at a time. And the second proposition is that once you have that residence, it's your residence forever, or until you file a change of residence address under Section 6. So with those two propositions in mind, what do we have in this case? We have the defendant here moving into his Belvedere apartment in 2011. He's there for a while. That's registered properly. He's there for a while. He goes to the hospital for a few days, and then he goes home. And when he goes home, he's arrested and charged with failing to register that Belvedere address under Section 3. Well, he registered that address, so the real easy solution in this case is that the state's in a proven guilty of not registering the Belvedere apartment when he moved in because he did register it. It was registered. That's the simple and easy answer, and it's the correct one. Where we get into trouble here is with, started off in the trial court, when the trial court started talking about, well, what about the legislative intent? He was concerned... by the law enforcement agency having jurisdiction of his current registration, including the itinerary for travel and the manner provided in Section 6 of this Act for notification to the law enforcement agency having jurisdiction of change of address. Isn't that really what we're dealing with here? You know, he wasn't charged with that, and I think that's why... I know that, and that's barely mentioned, but it would be superfluous if what he was charged with controls, wouldn't it? You mean what he was, if he had been charged with that? Right. I'm just wondering, isn't this the situation before us, what's contemplated in this, in 3A? You know, I think so, because really, those are his obligations under the statute. And because we're not talking about it is because the state never charged him with that. They've structured this charge so that we're not even involved with that statute, and that's why we're really not talking about it. But I think that's why we have a problem here. Because if you're going to require somebody to register or provide an itinerary, the statute really... I mean, the trial court was concerned about notice. Well, how are the police going to know that he's back? Well, that's what the itinerary is for. That's what the legislature intended, to provide the notice, is the itinerary. So why do we have a problem here? In this case, it's because he went to a hospital. It's clear that the legislature never considered this. This is an oversight. They completely overlooked this. You have an offender driving down the street. He gets hit by a truck. He goes to the hospital. They bring him there. He has surgeries for a month, and then they discharge him. How is that offender supposed to provide an itinerary when he's gone from his home for three or more days? He doesn't know he's going to get hit. He doesn't know how long he's going to be in the hospital. And after he's at the hospital for three or more days, how is he supposed to register the hospital as a temporary domicile in person at the police station when he's laid up in the hospital? The legislature never thought about it. So that's why we have a problem here, because now we have the trial court twisting the language of the statute to fill in the gap that was left open by the legislature. I think that's why we're having a problem, because I think you pointed directly at where we should be looking. So that's what we have here. We have a problem with this notice, and then we have all the courts and the parties trying to create this duty that doesn't exist in the statute, because that's what he's being charged with. He's being charged with something that's not required in the statute. He's being charged with not re-registering his home, his apartment.  There's nothing in the statute that says that. He already registered it, and he's never left it as his home. The fiction here is that the hospital is the home. This is how the appellate court created this duty that doesn't even exist. This is how it works. He lives in Belvedere. He goes to the hospital. So the appellate court is saying, oh, this is his residence now. And the state's arguing that, too. Oh, this is his residence. That's the fiction. Well, if you can only have one residence at a time, and the hospital's the residence, then the Belvedere apartment is nothing. And so that's how the duty is created, because now when he goes back, he's going back to nothing. So he's got to re-register it again. Isn't the purpose of registering your residence so that they can go there at any time and find you? Yes. Do they know where you are? Yes. Right. Well, how did the police, I mean, if there hadn't been a change, how would they know he was in the hospital? And then if he's in the hospital for a week, and during that week they go to his residence, he's not there, how do they know he's back home? They don't. And that's why this is the legislation overlooked. How is somebody in the hospital supposed to do this? But isn't the purpose of the legislation so that the police will know where sex offenders are at all times? No. No. They have freedoms. They can be away. For example, you know, we have the officer going to the hospital to register Mr. Pierce on January 5th. Defense counsel says that that's the date that Mr. Pierce went to the hospital. So can you imagine the conversation that would have happened if Mr. Pierce had a lawyer with him when that officer showed up from Park Forest to register him? Can you help me factually to just follow through on this question? Sure. How did this all happen? He's in the hospital. Did he contact the police? Did the hospital contact the police? How did this come to be that the officer came, presented him with a form that we'll be talking about, and how did he get filled out and how did he sign it? What happened? Well, as best as I can get from the reading of the record, because a lot of it comes in opening remarks and so forth, but apparently he was having some kind of psychiatric problem. The family was concerned. The police looked for him. They find him at the hospital in Belvedere. So there he is with the police in the hospital in Belvedere before he's transferred to the hospital in Park Forest. And then when he's in Park Forest, apparently he – So the police knew he was in a hospital in Belvedere? Yes. And then he gets transferred and the police then know he's been transferred to this other hospital? Right. And there was some language in there about him trying to tell the people at the hospital, hey, I'm a sex offender, I need to contact these people. So it either did happen that way or Belvedere police just told Park Forest, well, you know, he's coming over there. But the police did fill out the form for him? Yes, yes. The police took it on their responsibility on its own shoulders to go and register him when they have no obligation to do that. That's the offender's obligation. But if this did happen, like he goes over there on January 5th, the officer comes over on January 5th, and the officer is there going to register him, and there's a lawyer right there for the defendant, he's going to say, why are you here? Why are you registering him? You have no right to register him. Why? He hasn't been there for three days or more. He hasn't been away from his house for three days or more. He doesn't have to file an itinerary. He doesn't have to report to the hospital as anything. He has no obligations. And he says, why? And that brings up another problem here. The state was never required to prove that he was at the hospital for three days or more. The way that they framed his prosecution, they didn't have to prove it. They just had to prove that, hey, the officer registered him. That's all we had to show. But that registration was premature. It wasn't even required by the statute. So here we have basically a false registration, and we have the state claiming that, or basing its prosecution on the false registration, saying that false registration that's unnecessary, that the police had no right to do, triggers a duty now to re-register when you go back. I mean, everywhere you turn in this case, there's a problem with it. Counsel, isn't some of the terms ambiguous as well? For instance, the terms residence address and secondary address are not utilized in Section 3. That's right. So if a lawyer had been there and the officer says, well, I'm going to put down the Belvedere address as a secondary address, the attorney would say, why are you going to do that? This is how you fill out the form. Scratch out resident address. Put in residence address. Put the Belvedere apartment there. Scratch out secondary address. Write in temporary domicile. Put in the hospital address in there, and then check the temporary domicile box. And the officer would have looked at his form. He'd say, well, we don't have a temporary domicile box. In fact, there's nothing in the form about a temporary domicile. Well, then go back and change your form and come back in three days. And then properly register. That would be the response. Because this is how this has happened. They've written out the temporary domicile requirement from the statute. You know, they're trying to say that this is what the appellate court said. It said that he had a legal obligation to make that his residence. Well, he doesn't. When he went from Belvedere to the hospital, he has a legal obligation to make this his residence? No, he doesn't. He can go to the hospital for one day, two days, for an appointment. He doesn't have a legal obligation. But if we're going to take the appellate court's ruling that you create a residence when you go to the hospital, that means there will never be a temporary domicile created. They have wiped out that language from the statute. That's a violation of a cardinal rule of statutory construction. You can't read this statute in a way that renders meaningless part of the statute. And that's what they've done. That's what the state has done. On page 14 of its brief in this court, it states that a residence is established when an offender appears at a location with the intent to remain. Well, that's everywhere. Wherever you go, wherever the offender goes is now a residence. Wherever an offender goes and is physically there with the intent to remain, that's a residence. Well, where's a temporary domicile? It's never going to happen. They've written that out of the statute. And apparently the police have also ignored this. There's nothing in their forms about a temporary domicile, so they're ignoring it as well. You can't use the intent of the legislature to add things that aren't there. And that's basically what's being done here. They're adding something that's not there. They're charging the defendant with a felony offense for not re-registering their apartment when the statute doesn't even require that. You can't twist the language to provide some kind of notice that you wish was there, but the legislature never contemplated, and then have that end up as a prosecution for a felony offense. Not only does it subject offenders to prison time, but it also extends their registration period for another 10 years or whatever if they have that 10-year registration period. So there's a lot at stake here. It seems that when the registration was done at the hospital that was establishing that as initial or primary residence, not secondary, how would you respond to the majority's reasoning that Sections 3 and 6 of the Act, read together, make plain, the legislature intended that an offender must always keep the authorities notified of where he's going to be when he's leaving one residence and establishing another. If we assume that going from Belvedere to the hospital was establishing a new residence and then going back was re-establishing. Well, that's what the appellate court held, and I'm saying that's wrong. Is that all dependent upon what happened at the hospital at Park Ridge, the type of registration? You're saying that should have been? Well, yeah. I mean, once the police take it upon their shoulders to do it, they should do it right. But if you just look at the registration. Is it your position that since that was done in the first day when he didn't have to do it, that it's a felony? I don't know what it is. I think that it's, how is he going to stop the police when he's signing it? Here we have somebody who's described by trial counsel as somebody with borderline mental handicap, you know, mentally incompetent almost. And then he's having a psychiatric episode, and they're having him sign things. I mean, that's a problem right off the bat. After three days, he had an obligation to do something at the hospital? Yes, yes. Okay. And if that had been done properly, did he have an obligation then to do something when he left the hospital and went back to Belvedere? Not under the statute. You're saying that the registration, he doesn't need to re-register? No, absolutely. There's nothing in the statute that says that. The notice for going back is provided by the itinerary. That's what the legislature intended. But here he didn't, and he really can't. He can't provide an itinerary because he didn't know he was going to the hospital. He doesn't know how for, you know, for how long he's going to be going there. An itinerary, you know, you assume that you do that before you go. They never considered emergency hospitalizations. And if they had, they would have just said, if you have to go to the hospital, and you can't do your reporting and registering, then do it by phone. And three days after you are discharged, you have to report in person to the police department in your hometown. They could have put something like that real simple in there. But that's, you know, that's why we have a problem. But you can't twist the language to fill in that gap so that, I mean, it's just not there. Will you be addressing what you contend is an instructional error? Yes. It's just based on my reading of the statute. It's just a common sense reading. They charged him with failing to register the apartment under Section 3, so that's what they should have been instructed on. They should have been instructed that, to find him guilty, that when he moved into there and established that apartment as his residence, he didn't register it properly under the statute. And clearly he did. I mean, if you look back to your question about what did that actual thing that officer filled out, he filled that out. He didn't fill it out as a change of address. He checked the box that said initial registration. So the only thing that that can be is an initial registration of a temporary domicile. That's the only thing it can mean, because it can't be a residence, because the only way to change your residence address is under Section 6. So you have to go in and tell the police, I'm moving. And that makes it so much easier for the police to keep track of people, because all they have to do is keep track of that residence. And they don't have to worry about the offender going off and thinking, well, this is my residence. Well, that's too bad. You still have obligations here that that is your residence. So the police don't have to worry about anything until they're told by the offender that I'm moving. And it makes it so much easier for the police to keep track of these people. For example, there's a residence established by the offender. He's over here some day and he thinks, well, this is a wonderful place to live. In my mind, this is now my residence. Police don't have to worry about that, because if he's away from here for three or more days, he has to file an itinerary. And if he doesn't, he's violated it. So when they go and arrest him, they can arrest him for, hey, you didn't file an itinerary, and if you were over here for three or more days, then you'd fail to register that as a temporary domicile. And he'll say, well, I consider this my residence. Well, now he's just admitted to committing a third violation. If that's going to be his residence, then he didn't file under Section 6 a change of residence. So now he's guilty of violating it three ways. And it makes it easy on the police to keep track, because all they have to know is, what is that current address of registration? What is his residence? What is his residence address that's currently registered? Now, the language, you know, is kind of tough to follow, because they didn't want to say residence in the itinerary. You know, you have to use your current address of registration. When you're away from there, you have to file. They didn't want to say when you're away from your residence, because they don't want offenders thinking, well, you know, what's my residence? What do I consider home? No. Mr. Hildebrand, your time has expired. Oh, thank you. Thank you. Good morning, and may it please the Court, Counsel. I'm Assistant Attorney General Evan Elsner, on behalf of the people of the state of Illinois. Mr. Elsner, before you start and talk about what I think you're going to talk about, I just want to go back to my first question with Mr. Hildebrand. You make the point that the intent of the Act is not to inform police of where sex offenders might be, but where they actually currently are, right? That point is made in your briefs, is that correct? That's correct. All right. Back to the question I asked him, Mr. Hildebrand, about 3A, the provision that I quoted above, temporarily absent provision in 3A, we'll call it that. Even without re-registering, if that is what was charged, law enforcement in his hometown will know of his itinerary because that's required, and because they'll know of his itinerary, they'll know when he is expected to arrive back at home, right? So why wasn't that charged? Why isn't this confusion all pushed to the side if there was the proper charge of 3A, and then the police would know not where these sex offenders might be? They're going to know where they currently are because of this itinerary. We can't speak to why the trial counsel, the state's attorney, chose to prosecute the defendant the way it did, but what we can say is that you've identified exactly why the temporary absence provision doesn't work in all circumstances, and opposing counsel has made that clear, because it only works when there is an itinerary, when there's planned travel, and when the offender can specifically tell the police in the location where he's registered that he's going to be absent for a specific amount of time. So it's generally, this would apply more logically in the case of vacation, for example, where the offender knows he's going to be absent for two weeks. He tells police he's going to be gone for two weeks, and then the police know that he won't be there for two weeks, but he'll return, and when he returns, they'll know that he's back. In the case of an offender like this, who doesn't know how long he's going to be temporarily absent, he can tell the police, I'm going to be temporarily absent for an indefinite period of time, and then he goes to the other location, in this case the hospital, but then when he returns, the police have no way of knowing when that's going to be. It could be a week, it could be a month, it could be six months that he's in the hospital, and what happens is, without the additional obligation to register upon his return, when it becomes his current address again, the police have no way of knowing that he's back. So isn't that the fault of the legislature, then, for not providing that section? No, because the way the legislature created the framework for this statute is that it created a very simple symbiotic relationship between Section 3 and Section 6. Section 3 says that an offender is required to let police know when he's arrived somewhere that he's living there and he's going to be staying there. Section 6 requires the offender to inform police of the place that he's leaving, that he's left. And so there's no hole if we require an offender in every instance to let police know when he's leaving that he's left and to let police know when he's arriving that he's arrived. And so it's not the fault of the legislature for not accounting for it, because they did account for it. Can I ask you about the form, the actual form that was used here? Sure. Filled out by the police officer, apparently the evidence says. Circled, I believe, I can't tell, but is it initial registration? And there are other choices, annual, quarterly, homeless, weekly, change of address, school, employment, and none of those are checked, right? Correct. So the first part, is that initial registration, is that what it says? Yes. So it appears that initial registration is the portion that's checked and that other portions have been circled and highlighted. And my understanding of that is that this was an exhibit that was used at trial and that during the trial the record shows that certain portions of the form were being circled and highlighted for the court. So at least when the defendant initialed this, while he's in the psychiatric hospital, he's not indicating a change of address, correct? Correct. And the reason why, from my understanding of how this form works, is that it can work, it's not a specific Section 3 form or Section 6 form, it's just a registration form and it can be used for different purposes. It can be used for the Section 3 purpose of registering at a place where you've arrived, or it can be used for a Section 6 purpose, a change of address. How about the temporary absence piece, the temporary residence, the itinerary idea? None of that language appears here. Instead it says secondary address, which he gives as the Belvedere address. Correct. So as we know from the statute and from Section 3, an offender is required to register in person with the police in the jurisdiction where he's staying. So when he's registering, this form was used by the Forest Park Police when he was registering in Forest Park. The use of the secondary address line, if it's an address that's outside of Forest Park's jurisdiction, is irrelevant. He can't register or maintain the registration of a Belvedere address by providing a form to the Forest Park Police. So the use of the secondary address here is of no consequence. The address that matters here is the Forest Park address because he was providing this form to the Forest Park Police. The dissent in this case, of course, has very strong policy arguments here about whether or not interpretation of this form and its impact would, in fact, encourage sex offenders not to seek mental health treatment. There's a great deal of policy, obviously, in this dissent. And there's a great deal of criticism as to this form, that it doesn't really track the statutory language, assuming the defendant would understand the statutory language. Can you respond to some of those policy arguments? Well, so, yeah, I can respond by saying, clearly, the registration obligations didn't chill the offender's decision to go seek treatment. He didn't know he was going to get charged with a felony. Well, I think we're talking about the future. That's true. But the offender in this case went to the hospital, knew that he needed to register, and registered. And that wasn't the issue. The issue isn't whether or not offenders are going to have a problem registering when they get to the hospital. The issue is whether offenders simply need to register when they leave that current address and return to it a new current address or a current address that's different from the latest current address. So, in practice, how this plays out is most police departments, and the record reflects it in this case in Forest Park, is that the police have generally what's kind of like a beat officer whose job it is to be present at the hospital in case somebody arrives that's a sex offender and that requires registration. In this case, that's exactly what happened. The defendant arrived at the hospital. He stayed there. He knew that he needed to register there because he was a sex offender, and he requested it. And then the police officer arrived and assisted him in filling out the form. And I would just like to point out that the question about whether or not the form itself is invalid because the requisite number of days hadn't been met, it's actually incorrect based on the record. The record reflects testimony that Belvedere Police knew that the defendant, in this case, was being transported on January 1st to the Rittredge Hospital in Forest Park. The form was completed on January 5th, 2012, so that's four days that he spent at the hospital, thus making it a current address that he needed to register, and that he did register properly within the time frame that was allotted for him. Just one last question so I'm clear on your argument. If he had, before he was taken to the hospital, if he had notified the Belvedere Police officers and said, I'm going to the hospital because of my mental health issue, my psychiatric issue, and my itinerary is I'm going to return to the place I've been registered for some time, whatever, however you want to call it, my current address, would that be sufficient? I have a temporary absence in that I'm going to be hospitalized. Would that be sufficient? It could be sufficient. That's not the issue that's the case that needs to be decided right now. But it could be the case that reading the statute as we do would still require him to, upon his return, to notify the police that he's returned. And the reason for that is that the way we want to interpret the statute isn't specifically to address defendant's case here, but it's to address all cases, and all cases are going to be different. And in this case it was very simple. He left and then he came back. And if he had given an itinerary that said that he was going to be back on X date, then that would have been all well and fine. So the problem is a timing problem. At the heart of this is you agree he can have a temporary absence, a temporary residence, right? And if he notifies the police that he's going to have a temporary absence and a temporary residence, the key is he has to be able to say what date he's returning home. And that's what fails here? That's part of what fails here. But our position is that even if he provided that information, in order to apply the statute in an appropriate way for all offenders, that he still should be required upon his return to notify the police that he has returned. And the reason for that. Excuse me, but notify the police upon his return is different than registering your residence again, isn't it? I'm using notify the police kind of casually here, but what I'm saying is that if he's left his current residence or his current address and he's gone to a new place. You mean his temporary? His Belvedere apartment, for example. See, that's what's confusing is that the statute uses the word residence and temporarily. Temporary residence. And then what the case is talking about is secondary address and residence address. So which is, you know, does he have to re-register his real residence if he's going back to it? Well, so the form that the police uses is not controlling here. What's controlling, as this Court knows, is the language of the statute itself. And if we look to the language of the statute, the duty to register isn't actually even to register specifically a residence or a temporary domicile. It's to register the offender's current address. So that's where the duty is established. In the very first two sentences of Section 3A, it says that the duty, if you'll give me just one minute, the first sentence says that the sex offender shall within the time period prescribed in Subsection B register in person and provide accurate information as required. The second sentence says that such information shall include the offender's current address. So we're not talking about, and then the statute goes on to describe what can be a current address. It can be a residence, and it can be a temporary domicile, depending on the circumstances. Where do we look for those definitions, residence and temporary domicile? Further on in Section 3A. So what we see first is this duty to register the current address, and then there's no mention that it's supposed to be a permanent residence, a home residence, a fixed residence. And we know that the legislature could have used those terms because it does use the terms later in the statute to describe specifically what types of addresses, what types of locations can qualify as a current address when the offender is staying there. Where do we get from in B where it says, regardless of any initial prior or other registration shall within three days, establishing a residence, place of employment, or temporary domicile? How does hospital fit into the definition of residence or temporary domicile? Right. So if we go, unfortunately the paragraphs in Section 3 are not all numbered, which would have been a little bit more helpful. But if you go to the portion of Section 3 that begins for purposes of this article. For purposes of this article, the place of residence or temporary domicile is defined as any and all places where the sex offender resides for an aggregate period of time or three or more days during any calendar year. So what's interesting about this provision isn't just that it defines residence and temporary domicile, but also that it defines them together with no distinction in terms of the disclosure requirements. An offender's obligation is to register any location that he stays at for three days or more in the aggregate. And that location when he's staying there becomes his current address. So in this case, the defendant's current address changed twice. It changed first when he left his Belvedere apartment and went to the hospital. The hospital became his current address after he stayed there for three days and he registered it. And then it changed a second time when he left the hospital and went back to the Belvedere apartment. His current address had changed from his previous current address, which was the hospital, and it became the Belvedere apartment and he was required to register. So you're saying establishing a residence, because 3B does say establish a residence, or establish a temporary domicile, the establishment is the three-day requirement. That's what establishes it as a residence or a temporary domicile. Yes. Is that your argument? Our argument is that establishing essentially means settling to stay or settling at. So within three days of settling to stay at a temporary domicile, it must be registered. And it qualifies as a temporary domicile when he's stayed there for three days. So, for example, with the hospital, if he's stayed there for three days, that's the moment that it becomes a temporary domicile, right? After that, he then has a three-day window within which to register that. And that's because if he has settled to stay there and then it qualifies as an address that can be a current address, it's if he's stayed there for three days, and then he has a three-day window within which to register. So when he gives up that permanent residence, so when he goes back, then that becomes a residence pursuant to the statute. That's your position? Yes, because the statute here isn't concerned with where a sex offender leaves his belongings, and it's not concerned with the permanent residence or what he subjectively intends to be his permanent residence. The statute here is concerned with tracking and monitoring the presence, the location, and the movements of sex offenders and to know where they are at all times. And so in this case, the offender was in one location and was registered there, and the police knew that he was there. The offender moved to a separate location or moved to a new location, whether temporarily or not, and the police needed to know that he was there. And then when he returned, the police needed to know that he was back. The appellate court disregarded the rule of lenity, right? Yes, and the reason why the appellate court ruled that the rule of lenity didn't apply was because the rule of lenity is for grievance ambiguities where this court has absolutely no way of determining what the legislature intended. And in this case, that's just not the case. Would you agree they could have used better language than terms that connote something different than they're implying here? It's certainly always the case that the legislature could have done better, and I think that that's why we're all here is to interpret their words. How do you react to the majority's finding that the pertinent language in Section 3 is ambiguous? Is this language ambiguous that we're talking about here? We don't believe that the language is ambiguous in the context of the act and in the context of the provision that precedes it, that language, regardless of any initial prior or other registration, gives context to the word establishing. It lets us know exactly what that word was intended to mean. And it's true that there are two alternative arguments as far as what that word establishing means, but our position is that in the context of the act and what the legislature intended, and in the context of that prior phrase, regardless of any initial prior or other registration, that it's not ambiguous and it's quite clear. So you are asking us to reject what the appellate court majority held and say that this is plain language? Yes. We would ask you to affirm the ruling of the appellate court, but we don't believe that the language is ambiguous in this case. Mr. Elsner, this charge arises out of Officer Grubar's visit to his Belvedere apartment on February 2, 2012, right? Correct. So the police knew where he was because you had said before you had to notify them because they have to know where to find you. They went to his apartment. He was there. And as I understand the scenario, he was charged because when the officer went to the database, did not find that Belvedere address as his residence because the officer at the hospital had changed his residence, but yet he was still listed on that form that was executed on January 5th with a secondary address, and that's the Belvedere address, but that's not in the database. Is that right? Right. So what's the purpose of putting any information on the form that doesn't end up in the database? There may not be any purpose for putting a secondary address in, but again, the secondary address isn't what controls. It's the address that he's registering. But the reason that the police in this case, getting back to your initial point, the reason that the police in this case knew that the defendant was at that location was not because they knew that he was presently living there, but because they happened to receive a call about an individual acting suspiciously. When they responded to that call, they learned that the person who had called could identify the defendant as the individual, and they also knew that if he had a known address, not that he was living at that address, but that he had a known address in Belvedere. And so in very specific situations like that, it might work out. It's a small community of about 25,000 people in Belvedere. The police might know where to look. But in communities that are much larger, in a major metropolitan area where there are thousands of sex offenders and people can't necessarily identify who the suspicious person is, that's when we need to know where sex offenders are at all times. Mr. Elster, your time has expired, but Justice Burke has a question. I just wanted to follow up on Justice Kilbride's question. The problem is because in the statute, the term secondary address isn't even there or required to be put in the database. I mean, so it doesn't confusion start there as well. The term is used temporary address in the statute, not secondary. And that's where the form and the statute conflict. Yes, but that would essentially be a problem with the form, not a problem with the statute. And so we wouldn't ask for the statute to be interpreted based on the form. We ask for the form to be changed if it needs to be changed once this Court clarifies what the statute means. We're not basing our interpretation of the statute on the strength of the form that the police form added. No other questions. Thank you, Mr. Elster. Thank you. Mr. Hildebrand. Well, the best I can make from Mr. Elster's argument is that if the police don't know where the offender is, then the defendant has violated the statute. That's not what the statute says. And Justice Tice, you know, I think that what you brought out is correct. With the defendant being at the hospital, at the Belvedere Hospital with the police, why isn't that sufficient enough to be reporting an itinerary? They know he's going to the hospital. He can't tell them how long he's going to the hospital. So that does mean something. That would be sufficient. And as far as having the secondary address on there, that actually does mean something to me. It means that the police knew that he lived there in Belvedere, and they're actually putting it in the form because they know that's where he lives and that's where he's going to when he leaves. That's his home, and he's not changing it. And the fact of the matter is he never filed or reported a change of residence address under Section 6 in this case. So that always was his residence, and it never changed. So he didn't have to re-register it. As far as I can see, he had two obligations here. This goes back to what Justice Thomas initially brought out, is that his obligations here are, one, all offenders who are away from their home for three or more days, they have to file this itinerary. And while they're out there, if they stay anywhere for three or more days, they have to register that as a temporary domicile. So those were the two obligations, but he wasn't charged with those things. But if he had been, he would have had a bunch of defenses here. His first defense would be the obvious one. I was not at the hospital for three days or more. I was not away from my home for three days or more, so I didn't have to do anything. The legislature allows me to be away for two days without reporting. That's the freedom I have under the statute. It's only when three days or more kicks in, you have to start reporting and registering. So I didn't, so I'm not guilty. That's what he would say. If the state could prove he was there for three or more days, then his second defense would be that he didn't commit a voluntary act. I was in the hospital. I couldn't do these things. The third defense would be when the officer came over and started filling out this paperwork, he's accepting the responsibility to fill it out properly. So whatever he filled out is the functional equivalent of an itinerary and registering the hospital as a temporary domicile. He's supposed to be doing it correctly if he's going to take the obligation to come over and start helping me register. That's what his third defense would be. And his fourth defense would be that he did, in fact, provide an itinerary, which goes back to what we were talking about before, where he's at the hospital with these officers. Obviously, he's telling them, I'm going to the hospital. I need to be hospitalized. And whatever the officer did at the hospital was registering the hospital as a temporary domicile. That would be his defenses. And those are the things that he had an obligation to do. And what he's being prosecuted now for are obligations that are not in the statute. And so the state and the courts below are saying, well, we're going to read that in on the intent of the legislature. When they're using that tool of using the intent of the legislature, that's a tool for trying to figure out what the legislature meant by its words. And they're using that tool improperly. They're using that to put in things that aren't there. The legislature never thought about this. So how can you use legislative intent to read into the statute something? There was no intent. They completely overlooked this. So to say that it's legislative intent, they can read that into the statute, they're misusing it. They're reading in legislative intent that didn't exist when they were writing out the statute. Because they overlooked it. So he's being punished here for a felony offense for legislative oversight. And then the court and the prosecution coming in and reworking and twisting the language to make it fit something that's not there. And remember, every time the state says change of address, that really means nothing. Because Section 6, even though it's titled change of address, that's not what it's about. It's only change of residence address. And how do we know that? Because if you go down into the body of it, that's what it says. It says when an offender changes his residence address, he has to report that and then register it with the jurisdiction where he's moving. And what does that mean? That means I'm moving. He goes in there and says I'm moving. That's what it's for. And that's clearly what it means. When an offender lives somewhere and he wants to move, actually move somewhere, he is obligated to go in and report that and say I'm moving. And then wherever he moves to, he has to go in and register that new home in the jurisdiction where he's moving. That's how it's supposed to work. So if there's no questions, then we'd ask that this Court please reverse this conviction or in the alternative, grant a new trial where there would be proper jury instructions given to the jury. Thank you. Thank you. Case number 121072, People v. Pierce, will be taken under advisement as Agenda Number 3. Mr. Hildebrand and Mr. Elsner, thank you for your arguments this morning. You are excused. Marshal, the Supreme Court stands adjourned until 9 o'clock tomorrow morning.